## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ODELL L. CALVIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-cv-3166 |
| | ) | |
| | ) | Judge Rebecca R. Pallmeyer |
| COOK COUNTY d/b/a CERMAK | ) | |
| HEALTH SERVICES; | ) | Magistrate Judge Susan E. Cox |
| THOMAS J. DART, Sheriff of Cook | ) | |
| County; | ) | |
| TERRENCE BAKER, M.D.; | ) | |
| FNU TREMMEL, M.D.; | ) | |
| FNU PAUL, M.D.; | ) | |
| SUSAN SHEBEL, R.N.; | ) | |
| FNU ECUMA, R.N.; | ) | JURY TRIAL DEMANDED |
| FNU JACKSON, R.N.; | ) | |
| FNU IMAN, R.N.; | ) | |
| CERTAIN UNKNOWN | ) | |
| EMPLOYEES/AGENTS OF COOK | ) | |
| COUNTY d/b/a CERMAK | ) | |
| HEALTH SERVICES; | ) | |
| CERTAIN UNKNOWN | ) | |
| CORRECTIONAL OFFICERS; | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Odell Calvin ("Plaintiff" or "Mr. Calvin"), by and through his

attorneys, Blegen & Garvey, for his Complaint against Defendants Cook County

d/b/a Cermak Health Services, Sheriff Thomas J. Dart, Terrence Baker, M.D., FNU

Tremmel, M.D., FNU Paul, M.D., Susan Shebel, R.N., FNU Ecuma, R.N., FNU

Jackson, R.N., FNU Iman, R.N., certain unknown employees/agents of Cook County

d/b/a Cermak , and certain unknown correctional officers (collectively, "Defendants"), states as follows:

## NATURE OF THE ACTION

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law Plaintiff's rights as secured by the United States Constitution.

2.      Plaintiff Odell L. Calvin suffers from asthma and eosinophilic esophagitis ("EoE").  Asthma is a chronic lung disease that inflames and narrows the airways.  EoE is a chronic allergic, inflammatory disease in which eosinophil, a type of white blood cell, builds up in the lining of the esophagus. This can cause the esophagus to narrow to the point where food becomes stuck.  Asthma and EoE are serious medical conditions.  Despite Mr. Calvin's repeated attempts to secure appropriate care, monitoring, and treatment for these conditions, Defendants deliberately disregarded Mr. Calvin's medical needs.  As a result of the Defendants' deliberate indifference to Mr. Calvin's conditions, he has endured severe pain, unnecessary medical complications, and emotional distress, for which he is entitled to compensation.

3.      Additionally, one of the reasons certain Defendants failed to provide adequate care for Mr. Calvin was to retaliate against him for filing grievances against various employees/agents of Cook County d/b/a Cermak Health Services. This retaliation violated Mr. Calvin's rights, causing him severe pain, medical complications, and emotional distress for which he is entitled to compensation.

2

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the Eighth Amendment to the United States Constitution.

5.      Venue is proper under 28 U.S.C. § 1391(b) because some of the operative facts which give rise to the claims asserted herein occurred in the Northern District of Illinois.

## PARTIES

6.      Plaintiff Odell L. Calvin is an individual presently incarcerated in the Cook County Department of Corrections.  At all times relevant to the events at issue in this suit, Mr. Calvin was a pretrial detainee incarcerated in the Cook County Department of Corrections.

7.      Defendant Cook County is a municipal corporation located within Cook County, Illinois, and is organized pursuant to Illinois state law. Cermak Health Services ("Cermak") was at all times relevant hereto, an entity of Cook County Government, and was responsible for the medical screening, medical treatment, and overall medical care of inmates in the Cook County Department of Corrections, including Odell L. Calvin.

8.      Defendant Thomas J. Dart ("Dart") is the current Sheriff of Cook County and was Sheriff during the events at issue in this suit. At all times relevant hereto, Sheriff Dart employed personnel and/or contracted with agents, including co-defendants unknown correctional officers, within the Cook County Department of Corrections.

3

9.      Defendants Terrence Baker, M.D., FNU Tremmel, M.D., FNU Paul, M.D., Susan Shebel, R.N., FNU Ecuma, R.N., FNU Jackson, R.N., FNU Iman, R.N., unknown employees/agents of Cook County d/b/a Cermak ("unknown Cermak employees"), and unknown correctional officers, were at all times relevant hereto, employees of Cook County, who were medical care providers or correctional officers, and were responsible for the care, custody and welfare of Plaintiff while he was detained in the Cook County Department of Corrections.

## EXHAUSTION

10.     The Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a), provides that no action be brought by a prisoner under 42 U.S.C. § 1983 with respect to prison conditions until "such administrative remedies are available and exhausted."

11.     Plaintiff has exhausted all available remedies by initiating formal grievance procedures for claims under 42 U.S.C. § 1983, which were reviewed by the highest level of administrative appeal available, in an effort to obtain relief for his injuries related to and resulting from Defendants deliberate indifference to his serious medical needs.

## FACTUAL BACKGROUND

12.     In or around August 2015, Mr. Calvin presented medical records from Indiana University Hospital in Lafayette, Indiana, to FNU Mann, M.D. at Cermak. These records confirmed that Mr. Calvin suffered from EoE, and had previously had two surgeries to treat the condition in or around January and March 2015.

4

13.     FNU Mann, M.D. later referred Mr. Calvin to an asthma and allergy specialist at Stroger Hospital in Chicago, Illinois.

14.     Mr. Calvin was transported to see the asthma and allergy specialist, Byung Ho Yu, M.D., at John H. Stroger, Jr. Hospital in or around August 2015. Dr. Yu prescribed Mr. Calvin an Epinephrine Auto-Injector ("EpiPen"), Diphenhydramine, and asthma pumps to treat his asthma and EoE.

15.     During the same visit, Dr. Yu notified unknown Cermak employees that Mr. Calvin needed to see a gastroenterologist for his EoE, and ordered that Cermak perform a blood test on Mr. Calvin to see whether he suffered from food allergies that might exacerbate his conditions.

16.     Upon his return to the Cook County Department of Corrections, Mr. Calvin was placed in a housing unit in Division 10 where he was confined to a cell, as opposed to a dormitory. There was no emergency call button in Mr. Calvin's cell, and correctional officers were not stationed within the tier.

17.     Mr. Calvin was not permitted to keep his EpiPen on his person, nor were correctional officers permitted to handle the EpiPen. Rather, only medical personnel who were not readily available were permitted to handle the EpiPen.

18.     At no time while Mr. Calvin was housed in Division 10 was the EpiPen immediately available to him in case of an emergency.

19.     At no point between approximately August 2015 and October 5, 2015 was Mr. Calvin taken to see a gastroenterologist.

5

20.     At no point between approximately August 2015 and October 5, 2015 was the aforementioned blood test performed on Mr. Calvin.

21.     On or about October 5, 2015, Mr. Calvin was again transported to Stroger Hospital to see Dr. Yu. Dr. Yu prescribed Mr. Calvin a QVAR inhaler to use six times per day to lubricate his throat, as well as another asthma pump or pumps.

22.     While at Stroger, Mr. Calvin reported to Dr. Yu that the blood test had not been performed, and that and that he was not receiving some of his prescribed medications, namely, the asthma pumps and the diphenhydramine

23.     Dr. Yu then called Dr. Baker in Mr. Calvin's presence and alerted him to the inadequate care Mr. Calvin was receiving from Cermak.

24.     Dr. Baker responded that the blood work would be completed and that Mr. Calvin's medications would be ordered.

25.     Upon Mr. Calvin's return to the Cook County Department of Corrections, however, no blood work was performed, and Mr. Calvin was provided irregular and delayed access to his medications.

26.     On or about October 9, 2015, Mr. Calvin suffered an allergic reaction and asthma attack in his cell.  Mr. Calvin felt as though he was choking and struggled for air as his tongue swelled and his mouth broke out in hives.

27.     Mr. Calvin yelled for help and kicked at the cell door, but unknown correctional officers and unknown Cermak employees stationed outside Mr. Calvin's tier in Division 10 failed to respond.

28.     Mr. Calvin suffered for hours like this before his symptoms subsided.

6

29.    At no point during this incident was an EpiPen, Diphenhydramine, or any other medication made available to Mr. Calvin.

30.    After this incident, on October 11, 2015, Mr. Calvin filed a grievance describing the allergic reaction and asthma attack and requesting he be moved to a dormitory housing unit where an EpiPen would be available and where he would be properly monitored by staff.  An unknown correctional officer responded that "there are no security alerts preventing housing in a cell. All medical concerns should be addressed by medical personnel."  Ultimately, no action was taken.

31.    On or about October 12, 2015, FNU Anderson, R.N., told Mr. Calvin that his confinement in a cell, without immediate access to an EpiPen, was life-threatening given his conditions.

32.    In Mr. Calvin's presence, Nurse Anderson contacted Dr. Baker and advised him of her concerns about Mr. Calvin's housing assignment.

33.    Nevertheless, the same day, Mr. Calvin was returned to the cell where he had suffered the allergic reaction and asthma attack.  Shortly thereafter, he was moved to a housing unit in Division 1, where he was also confined to a cell, and where correctional officers were stationed outside the tier.

34.    Mr. Calvin filed a grievance on October 12, 2015 regarding his need to be housed in a dormitory setting, rather than in a cell, so that he would be properly monitored and have access to an EpiPen if needed.  No action was taken.

35.    At no time while Mr. Calvin was housed in Division 1 was the EpiPen immediately available to him.

7

36.     On or about October 14, 2015, Mr. Calvin suffered another allergic reaction and asthma attack in his cell, during which he experienced the same symptoms described in paragraph 27, above.

37.     Once again, Mr. Calvin kicked at the door to his cell and yelled for help, but unknown correctional officers and unknown Cermak employees stationed outside Mr. Calvin's tier in Division 1 failed to respond.

38.     At no point during this incident was an EpiPen, Diphenhydramine, or any other medication available to Mr. Calvin.

39.     On or about October 15, 2015, Mr. Calvin submitted grievances relating to the lack of appropriate medical care he had experienced.  Specifically, he noted that he had not received some of his medicine for weeks, and that his EpiPen was not immediately available to him.

40.     On October 16, 2015, Susan Shebel, R.N. responded that EpiPens are not a "KOP" (keep on person) item and that they are available on the unit "when needed." Mr. Calvin requested an appeal, arguing that EpiPens were not available on the unit.  Nurse Shebel did not accept the appeal, stating that Mr. Calvin did not have an order for an EpiPen.

41.     Around this time, Mr. Calvin was transferred to Division 8, where he was placed in dormitory style housing.

42.     Around this time, Mr. Calvin repeatedly complained to FNU Ecuma, R.N., FNU Jackson, R.N. and FNU Iman, R.N., that he was not receiving his medication.  In turn, Nurse Ecuma, Nurse Jackson, and Nurse Iman responded that

they knew he should be receiving medication, that they did not know why he was not receiving it, and that he should wait to be seen by a doctor. They took no action to provide him his medication.

43.     On or about October 26, 2015, Mr. Calvin submitted grievances relating to the inadequate medical care he was receiving, including failing to provide him with his medication, failing to perform ordered blood work, and failing to take him to see a gastroenterologist. Nurse Shebel responded that his medication had been "ordered," that he was referred to "Allergy and G.I.," and that there was no order for an EpiPen.  Mr. Calvin's request for an appeal was denied.

44.     On November 3, 2015, while in a holding cell at the George N. Leighton Criminal Courts Building in Chicago, Illinois, Mr. Calvin suffered another asthma attack. At no point during the attack were Mr. Calvin's medications made available to him. The attack only subsided when inmate permitted Mr. Calvin to use his asthma pump.

45.     Mr. Calvin submitted a grievance regarding this incident the same day, again requesting his prescriptions and blood test.  No action was taken.

46.     On November 11, 2015, Mr. Calvin suffered from another asthma attack.  Unknown correctional officers and unknown Cermak employees took more than ten minutes to respond to this incident.  In the meantime, another inmate permitted Mr. Calvin to use his asthma pump.

47.     The same day, Mr. Calvin filed two grievances, advising jail personnel of the asthma attack, and again requesting his prescribed medication and blood test.

48.     On or about December 10, 2015, FNU Tremmel, M.D. of Cermak ordered an emergency x-ray on Mr. Calvin's throat. No x-ray, however, was ever performed.

49.     On or about December 12, 2015, Mr. Calvin was sent to Cermak for blood work, per Dr. Yu's orders. When he arrived, however, unknown Cermak employees immediately turned him away, called him a "trouble maker" and told him to "grieve it."

50.     On or about December 16, 2015, Mr. Calvin notified Nurse Jackson and Nurse Ecuma that his throat was bleeding and felt like it was closing up due to his EoE. He stated that food was getting caught in his throat and that it was even becoming difficult to drink water because of the condition. He again requested to see a gastroenterologist.

51.     In response, Nurse Jackson and Nurse Ecuma provided Mr. Calvin with a bottle of saline solution. This failed to provide any relief.

52.     On or about December 21, 2015, Mr. Calvin informed Dr. Tremmel that his throat was bleeding, painful, and felt like it was narrowing. He asked to be sent to a gastroenterologist as Dr. Yu had directed. Dr. Tremmel declined to send Mr. Calvin to a gastroenterologist, and instead ordered another emergency x-ray. Again, however, no x-ray was performed.

10

53.     On or about January 25, 2016, Mr. Williams had an appointment FNU Paul, M.D. at Cermak, where he asked her for a substitution for a medication, Patrozole, that was causing him to vomit, and asked her to send him to see a gastroenterologist.  Dr. Paul refused both requests. Additionally, Dr. Paul told Mr. Calvin that he was a "troublemaker" and complained about the grievances he had filed.

54.     Days later, Mr. Calvin was transferred from Division 8 to Division 10, where he was once again placed in a cell.

55.     On or about February 17, 2016, Mr. Calvin filed a grievance about his placement in Division 10. No action was taken as a result of this grievance.

56.     In or around late February 2016, a nurse who was aware of Mr. Calvin's conditions told him, "You should never be in a cell with your medical problems."  Within an hour, the nurse had arranged for Mr. Calvin to be transferred back to Division 8.

57.     Mr. Calvin's EoE symptoms continued following his transfer to Division 8.  On or about February 21, 2016 and February 24, 2016, he submitted medical requests alerting unknown correctional officers and unknown Cermak employees to the fact he was experiencing tremendous pain and burning in his throat and still coughing up blood.  No action was taken.

58.     It was not until approximately April 2016 that Mr. Williams was finally transported to see a gastroenterologist for his EoE.  The gastroenterologist at Stroger Hospital determined that a surgical procedure should be performed.

11

59.     The surgical procedure required that Plaintiff fast for a number of hours beforehand.

60.     Between April 2016 and the present, the surgical procedure has been scheduled multiple times.  However, unknown correctional officers and unknown Cermak employees have failed to provide Mr. Calvin with any advance notice of the procedure, and have failed to inform him when he should begin fasting. As a result, the procedure has been cancelled and rescheduled several times because of the lack of fasting.

61.     As of July 14, 2016, the surgical procedure had not been performed.

**COUNT I**
**Claim under 42 U.S.C. 1983:**
**Cruel and Unusual Punishment, Deliberate Indifference to Serious Medical Needs**
**(Individual Defendants)**

62.     Plaintiff incorporates paragraphs 1 through 61 of this First Amended Complaint as though fully set forth herein.

63.     At all relevant times, Defendants Terrence Baker, M.D., FNU Tremmel, M.D., FNU Paul, M.D., Susan Shebel, R.N., FNU Ecuma, R.N., FNU Jackson, R.N., FNU Iman, R.N., certain unknown employees/agents of Cook County d/b/a Cermak Health Services, and certain unknown correctional officers (collectively, the "Individual Defendants") were acting under color of state law.

64.     The Eighth Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishment.

12

65. Plaintiff has serious medical needs because he suffered from asthma and EoE, both of which caused severe pain and suffering.

66. The Individual Defendants knew there was a substantial risk of serious harm to Plaintiff by failing to provide proper care and treatment for these conditions beginning in approximately August 2015 and continuing through the present.

67. The Individual Defendants continually took woefully inadequate action to monitor, care for, and treat Plaintiff's conditions and related complications that he repeatedly reported.

68. The Individual Defendants are liable for the violation of Plaintiff's rights under the Eighth Amendment because they were aware of Plaintiff's serious medical needs and deliberately indifferent to them, resulting in harm to Plaintiff.

69. As a direct and proximate result of the actions of the Individual Defendants, Plaintiff suffered severe physical and psychological injuries, stress, pain and suffering, and other damages.

WHEREFORE, Plaintiff, Odell L. Calvin, respectfully requests that this Court enter judgment in his favor and against Defendants Terrence Baker, M.D., FNU Tremmel, M.D., FNU Paul, M.D., Susan Shebel, R.N., FNU Ecuma, R.N., FNU Jackson, R.N., FNU Iman, R.N., certain unknown employees/agents of Cook County d/b/a Cermak Health Services, and certain unknown correctional officers, awarding compensatory damages, punitive damages, attorneys' fees and costs under 42 U.S.C. 1988(b), and any other relief this Court deems appropriate.

13

## COUNT II
## Claim under 42 U.S.C. 1983:
## Cruel and Unusual Punishment, Deliberate Indifference to Serious Medical Needs
## (Defendant Cook County d/b/a Cermak Health Services)

70.     Plaintiff incorporates paragraphs 1 through 61 of this First Amended Complaint as though fully set forth herein.

71.     The Eighth Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishment.

72.     Plaintiff's right under the Eighth Amendment to be free from cruel and unusual punishment has been abridged by Cermak's deliberate indifference to Mr. Calvin's serious medical needs.

73.     While in the custody of the Cook County Department of Corrections, Plaintiff is restrained from caring for himself and Cermak has deliberately delayed and/or deliberately denied medical care necessary to alleviate obvious serious pain and suffering resulting from Plaintiff's serious medical conditions, including his asthma and EoE.

74.     At all times relevant to the events at issue in this First Amended Complaint, defendant Cermak was a department of Cook County and is the principal source of health care to inmates at the Cook County Department of Corrections.

75.     In this capacity, Defendant Cermak acted under the color of state law, and Cermak, as a provider of healthcare services to inmates at the Cook County Department of Corrections, was responsible for the creation, implementation,

14

oversight, and supervision of all policies and procedures followed by Cermak and Cook County Department of Corrections employees who were medical care providers to inmates incarcerated at the Cook County Department of Corrections.

76.     At all times relevant to the events at issue in this Complaint, Cermak maintained a policy or custom under which inmates with serious medical conditions, like Mr. Calvin, were routinely denied access or timely access to proper or sufficient medication and/or medical care, which was manifest in the frequent refusal of employees of Cermak to provide adequate medication or medical care to inmates, whom they know have serious medical problems.

77.     Cermak's policies and customs resulted in the consistent failure and refusal of its employees and agents to provide proper or adequate medication and medical care to Plaintiff.

78.     Cermak had a constitutional obligation to maintain and provide continuing adequate and appropriate medical care and treatment of prisoners incarcerated at the Cook County Department of Corrections.

79.     As a direct and proximate result of the unconstitutional policies and customs of Cermak, Plaintiff was deprived of his rights under the Eighth Amendment of the United States Constitution.

80.     At all relevant times, Cermak, by and through its agents, knew of Plaintiff's need for medical care and knew that failure to provide or timely provide such care would exacerbate severe pain and suffering caused by Plaintiff's injuries.

However, Cermak deliberately and continually failed to take reasonable steps to ensure Plaintiff received the medical care required.

WHEREFORE, Plaintiff, Odell L. Calvin, respectfully requests that this Court enter judgment in his favor and against Defendant Cermak, awarding compensatory damages, punitive damages, attorneys' fees and costs under 42 U.S.C. 1988(b), and any other relief this Court deems appropriate.

## COUNT III
### Claim under 42 U.S.C. 1983:
### Cruel and Unusual Punishment; Deliberate Indifference to Serious Medical Needs; Failure to Adequately Train or Supervise
### (Defendant Thomas J. Dart, Sheriff of Cook County)

81. Plaintiff incorporates paragraphs 1 through 61 of this First Amended Complaint as though fully set forth herein.

82. The Eighth Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishment.

83. Plaintiff's right under the Eighth Amendment to be free from cruel and unusual punishment has been abridged by Dart's deliberate indifference to Mr. Calvin's serious medical needs.

84. At all times relevant to the events at issue in this Complaint, defendant Dart was the elected Sheriff of Cook County and head of the Cook County Department of Corrections.

85. In this capacity, Dart acted under the color of state law, and Dart, as the head of the Cook County Department of Corrections, was responsible for the

16

creation, implementation, oversight, and supervision of all policies and procedures followed by correctional officers at the Cook County Department of Corrections.

86. At all times relevant to the events at issue in this Complaint, Dart, as the head of the Cook County Department of Corrections, maintained a policy or custom under which inmates with serious medical conditions, like Mr. Calvin, were routinely denied access or timely access to proper or sufficient supervision or care, which was manifest in the frequent failure of correctional officers to monitor and come to the aid inmates with serious medical conditions.

87. At all times relevant to the events at issue in this Complaint, Dart, as the head of the Cook County Department of Corrections, maintained a policy or custom of failing to adequately staff his facilities with the appropriate personnel and adequately train, supervise, discipline, and control his correctional officers, such that his failure to do so manifests deliberate indifference;

88. At all times relevant to the events at issue in this Complaint, Dart, as the head of the Cook County Department of Corrections, facilitated the very type of misconduct at issue here by failing to adequately staff his facilities with the appropriate personnel and adequately train, supervise, discipline, and control his correctional officers, and in that way Dart directly encourages future abuses such as those causing the constitutional violations alleged herein;

89. Dart's policies and customs resulted in the consistent failure and refusal of his employees and agents to provide proper or adequate supervision and care to Plaintiff.

17

90.     Dart had a constitutional obligation to maintain and provide continuing adequate and appropriate supervision of and care to prisoners incarcerated at the Cook County Department of Corrections.

91.     As a direct and proximate result of Dart's unconstitutional policies and customs, Plaintiff was deprived of his rights under the Eighth Amendment of the United States Constitution.

92.     At all relevant times, Dart, by and through his agents, knew of Plaintiff's need for adequate care and supervision and knew that failure to provide such care and supervision would cause severe pain and suffering as a result of Plaintiff's injuries.  However, Dart deliberately and continually failed to take reasonable steps to ensure Plaintiff received adequate care and supervision.

WHEREFORE, Plaintiff, Odell L. Calvin, respectfully requests that this Court enter judgment in his favor and against Defendant Dart, awarding compensatory damages, punitive damages, attorneys' fees and costs under 42 U.S.C. 1988(b), and any other relief this Court deems appropriate.

## COUNT IV
### Claim under First Amendment: Retaliation for Pursuing Grievances
### (All Defendants)

93.     Plaintiff incorporates paragraphs 1 through 61 of this First Amended Complaint as though fully set forth herein.

94.     Between approximately October 2015 and the present, Plaintiff filed numerous grievances accusing Defendants, other correctional officers, and other

employees/agents of Cermak of deliberate indifference to Plaintiff's serious medical needs.

95.     After Plaintiff's grievances were filed, certain of the Defendants engaged in a pattern of conduct that was designed to punish Plaintiff in retaliation for having pursued his grievances with respect to his failure to receive proper medical care while incarcerated at the Cook County Department of Corrections. These actions violate the Plaintiff's rights conferred under the First Amendment.

96.     Specifically, certain of the Defendants, in retaliation for, among other things, Plaintiff's filing and pursuing grievances, took numerous retaliatory actions, including, but not limited hereto, failing to address Plaintiff's serious medical conditions and placing Plaintiff in inappropriate housing units.

97.     All of these actions were taken in retaliation of Plaintiff' having filed and pursued grievances in the Cook County Department of Corrections.

98.     By engaging in such conduct, the Defendants have violated Plaintiff's right to petition this Court for the redress of grievances at issue in this case that is guaranteed by the First Amendment.

WHEREFORE, Plaintiff, Odell L. Calvin, respectfully requests that this Court enter judgment in his favor and against Defendants Cook County d/b/a Cermak Health Services, Sheriff Thomas J. Dart, Terrence Baker, M.D., FNU Tremmel, M.D., FNU Paul, M.D., Susan Shebel, R.N., FNU Ecuma, R.N., FNU Jackson, R.N., FNU Iman, R.N., certain unknown employees/agents of Cook County d/b/a Cermak , and certain unknown correctional officers, awarding compensatory

damages, punitive damages, attorneys' fees and costs under 42 U.S.C. 1988(b), and

any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**s/Patrick W. Blegen**
**PATRICK W. BLEGEN**, One of the
attorneys for Plaintiff, Odell L. Calvin.

**BLEGEN & GARVEY**
53 West Jackson Boulevard, Suite 1437
Chicago, Illinois 60604
(312) 957-0100

20